FILED
U.S. District Court
District of Kansas
02/27/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

JASON A. FULTON,

Plaintiff,

v.

STEPHANIE SMITH, Judicial Administrator, Kansas Office of Judicial Administration

(OJA), in official capacity;

ALEX WONG, Chief Information Technology Officer, Kansas Office of Judicial

Administration (OJA), in official capacity;

LISA TAYLOR, Public Information Director (Judicial Branch KORA Records

Custodian), Kansas Judicial Branch, in official capacity;

DOUGLAS T. SHIMA, Clerk of the Kansas Appellate Courts, in official capacity;

ANTHONY T. BUKATY, Chief Deputy Clerk of the Kansas Appellate Courts, in

official capacity;

STACY PLETCHER, Clerk of the District Court, Shawnee County (Third Judicial

District), in official capacity;

DOES 1–10 (KANSAS OJA CMS/PORTAL OPERATORS), in official capacities,

Defendants.

Case No. _____ 26-3039-JWL

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

JASON A. FULTON,
Plaintiff,

v.

STEPHANIE SMITH, Judicial Administrator, Kansas Office of Judicial Administration
(OJA), in official capacity; ALEX WONG, Chief Information Technology Officer,
Kansas Office of Judicial Administration (OJA), in official capacity; LISA TAYLOR,
Public Information Director (Judicial Branch KORA Records Custodian), Kansas Judicial
Branch, in official capacity; DOUGLAS T. SHIMA, Clerk of the Kansas Appellate
Courts, in official capacity; ANTHONY T. BUKATY, Chief Deputy Clerk of the Kansas
Appellate Courts, in official capacity; STACY PLETCHER, Clerk of the District Court,
Shawnee County (Third Judicial District), in official capacity; DOES 1–10 (KANSAS
OJA CMS/PORTAL OPERATORS), in official capacities,

Defendants.                              Case No. _26-3039-JWL_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### (42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343, 2201–2202)

1      **I.**                    **INTRODUCTION**

2          Plaintiff brings this civil rights action under 42 U.S.C. § 1983 to address a

3  present-tense Record-Custody and auditability dispute arising from a newly appearing

4  back-dated '09/22/1998 – Minutes' line in the certified Register of Actions for State v.

5  Fulton, Case No. 97-CR-2353. After nearly 27 years, the official case record for <u>State v.</u>

6  <u>Fulton</u>, Case No. 97-CR-2353, has inexplicably changed in a way that undermines

7  confidence in the judicial record. A new docket entry dated September 22, 1998—

8  described as a "Judge's Minutes" entry—now appears in the certified Register of Actions

1   ("ROA") for that case, even though this entry was entirely absent from every earlier

2   certified copy of the record.

3        This newly added entry corresponds to a proceeding (apparently a hearing on a

4   Motion for New Trial) that occurred in late September 1998 but was never properly

5   documented on the docket at the time. Ordinarily, if a portion of the trial record (such as

6   a hearing transcript) was unavailable, the proper course would have been to formally

7   reconstruct and settle the record on appeal under Kansas Supreme Court Rule 3.04 (the

8   State-Court analog to Fed. R. App. P. 10(c) and 10(e)). Instead, decades later, the official

9   ROA itself was altered to insert this anomalous "Judge's Minutes" entry long after the

10  fact, without any formal record-reconstruction process. The factual basis for these claims

11  is set forth in Section IV (Statement of Facts).

12       Specifically, Plaintiff seeks orders that preserve the status quo of the certified

13  Register of Actions, prevent further unlogged edits or republishing that could overwrite

14  custody evidence, and require preservation/production of the audit metadata and system

15  records necessary to determine when, how, and by what custody mechanism the back-

16  dated "09/22/1998 – Minutes" entry first appeared in certified output.

17       Plaintiff contemporaneously submits a separately docketed Notice attaching the

18  Appendix A Target Subset (Selected Items Only) for identification and evidentiary

19  support. The Appendix A Target Subset consists only of Appendices 1A–1C, 5, 6A–6B,

20  10–12, 15B–18, 19A, 20–22 (including 21A–21E). This subset supports Plaintiff's

21  pending Rule 65 request and enables rapid verification. This filing is not the complete

22  Control Record Set (Appendices A–C). Plaintiff will seek leave to file the complete

23  Control Record Set (Appendices A–C) after screening or upon order of the Court. This

1     Complaint adopts and incorporates the filed Appendix A Target Subset (Selected Items

2     Only) by reference under Fed. R. Civ. P. 10(c) for identification and evidentiary support;

3     the requested relief is fully stated in the Prayer for Relief and does not depend on any

4     appendix as operative terms.

5          Notably, Plaintiff is not seeking any ruling on the ultimate merits of his

6     underlying case, nor asking this Court to vacate any State-court judgment or to otherwise

7     intervene in the State proceedings. This Federal action does not seek review,

8     modification, or reversal of any State judgment; it seeks prospective relief directed to

9     record custody, provenance, and auditability. The jurisdictional bar applicable to de facto

10    appeals of State judgments does not apply. Rooker v. Fidelity Tr. Co., 263 U.S. 413

11    (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Exxon Mobil Corp. v.

12    Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

13         Rather, it asks only for preservation and chain-of-custody measures needed to

14    prevent any further alteration, loss, or overwriting of evidence while this Court evaluates

15    Plaintiff's claims. Because Plaintiff seeks narrowly tailored prospective relief directed to

16    record integrity and auditability, and does not ask this Federal Court to intervene in the

17    merits of any State proceeding, abstention is unwarranted. Sprint Commc'ns, Inc. v.

18    Jacobs, 571 U.S. 69 (2013).

19         To the extent Defendants contend Plaintiff's requested preservation relief

20    implicates 28 U.S.C. § 2283, § 1983 is an expressly authorized exception permitting

21    Federal injunctive relief to prevent ongoing Constitutional violations. Mitchum v. Foster,

22    407 U.S. 225 (1972). The relief sought is strictly limited to maintaining the last

23    uncontested status quo of the record and to securing the origin and authenticity

1   (provenance) of the disputed September 1998 ROA entry. In essence, Plaintiff simply

2   seeks to preserve the certified ROA output status quo in its current form and requires a

3   transparent accounting of how this late-appearing 09/22/1998 entry came to be, so that

4   his Federal rights can be fully and fairly protected in this § 1983 action.

5          For clarity, this Complaint refers to the contested 09/22/1998 docket entry and its

6   immediately surrounding entries and linking data in the Register of Actions as the

7   "September 1998 ROA Hinge Cluster." As noted, Appendix A illustrates the discrepancy

8   by comparing event dates, file-stamp fields, and ROA index placement, allowing the

9   Court to verify record structure without revisiting the merits. The Appendix A Target

10  Subset is cited as supporting record artifacts filed under the separately docketed Notice of

11  Filing.

12  **II.**                    **JURISDICTION AND VENUE**

13         1.     For the reasons outlined above, Plaintiff properly invokes the jurisdiction

14  of this Court to seek redress for the alleged constitutional violations. This action arises

15  under the Constitution and laws of the United States, including 42 U.S.C. § 1983, thereby

16  presenting a Federal question within this Court's original jurisdiction.

17         2.     Specifically, Plaintiff's claims allege deprivations of rights secured by the

18  Fourteenth Amendment (through the maintenance of an inconsistent and altered Court

19  record under Color of State Law), which confers subject matter jurisdiction under 28

20  U.S.C. § 1331.

21         3.     Additionally, this Court has jurisdiction under 28 U.S.C. § 1343(a)(3) to

22  redress the deprivation of civil rights under Color of State Law, and it has authority to

23  grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202. All Defendants, being

1    officials of the Kansas judicial branch sued in their official capacities for prospective

2    relief, are subject to the personal jurisdiction of this Court. Because Plaintiff seeks only

3    prospective declaratory and injunctive relief to halt ongoing Constitutional violations by

4    State officials, this action falls within the recognized exception for official-capacity suits.

5    Ex parte Young, 209 U.S. 123 (1908).

6        4.    Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b).

7    A substantial part of the events or omissions giving rise to the claim occurred in Kansas,

8    as the disputed docket entry and all underlying Court proceedings at issue transpired in

9    Shawnee County, Kansas (within this District).

10       5.    Moreover, all Defendants are employed by or affiliated with the Kansas

11   judicial system and perform their official duties within the State of Kansas. Accordingly,

12   both the key events and the Defendants' official capacities are centered in this District,

13   making the District of Kansas the appropriate and convenient forum for this action.

14   **III.**                **PARTIES**

15       5.    Plaintiff: Jason A. Fulton is an individual residing in the State of Kansas.

16   He was the criminal defendant in State v. Fulton, Case No. 97-CR-2353 in the Shawnee

17   County District Court – the case at the center of this lawsuit. Plaintiff brings this action to

18   vindicate his Federal rights affected by the maintenance and alteration of the official

19   Court record in that case. At all times relevant to this action, Plaintiff's interest in an

20   accurate and consistent Court record has been directly impacted by Defendants' conduct

21   described herein.

22       6.    Defendant Stephanie Smith is the Judicial Administrator for the Kansas

23   Office of Judicial Administration ("Kansas OJA"), sued in her official capacity. In this

1    role, Defendant Smith is the chief administrative officer of the Kansas Judicial Branch,

2    responsible for overseeing Court operations statewide – including the management of

3    case records and the electronic case management systems used by Kansas Courts. She

4    exercises supervisory authority over the maintenance and certification of official Court

5    records.

6         7.    Defendant Alex Wong is the Chief Information Technology Officer for the

7    Kansas Judicial Branch (OJA), sued in his official capacity. As the judicial branch's top

8    IT official, Defendant Wong is responsible for the development, implementation, and

9    maintenance of the electronic case management system and the public Court records

10    portal through which Court records (such as the Register of Actions) are stored, updated,

11    and accessed. His duties include ensuring the integrity and security of electronic Court

12    record systems.

13         8.    Defendant Lisa Taylor is the Public Information Director for the Kansas

14    Judicial Branch and serves as the designated Kansas Open Records Act (KORA) records

15    custodian for the judicial branch, sued in her official capacity. In her role as Public

16    Information Director and KORA custodian, Defendant Taylor is responsible for handling

17    public Access to Court information and fulfilling official records requests for the Kansas

18    Courts. This includes providing certified copies of Court records and ensuring their

19    accuracy.

20         9.    Defendant Douglas T. Shima is the Clerk of the Kansas Appellate Courts

21    (encompassing the Kansas Supreme Court and Court of Appeals), sued in his official

22    capacity. As Clerk of the Appellate Courts, Defendant Shima is responsible for

23    maintaining Appellate Court records and dockets, and for receiving and certifying records

1   from trial Court proceedings during appeals. His duties include safeguarding the integrity

2   of Trial Court records that are forwarded for Appellate review and issuing official record

3   certifications as needed.

4        10.    Defendant Anthony T. Bukaty is the Chief Deputy Clerk of the Kansas

5   Appellate Courts, sued in his official capacity. In this capacity, Defendant Bukaty assists

6   the Clerk of the Appellate Courts (Defendant Shima) in managing and certifying Court

7   records for appeals. He helps oversee the handling of trial Court records (such as the

8   Register of Actions for underlying cases) when those cases are before the Appellate

9   Courts.

10       11.    Defendant Stacy Pletcher is the Clerk of the District Court of Shawnee

11  County, Kansas (Third Judicial District), sued in her official capacity. As the Shawnee

12  County District Court Clerk, Defendant Pletcher is the official custodian of records for

13  cases filed in that Court, including State v. Fulton, Case No. 97-CR-2353. Her

14  responsibilities include maintaining the accuracy of the Register of Actions and docket

15  entries in Shawnee County cases, certifying copies of those records, and supervising any

16  updates or corrections to case dockets.

17       12.    Defendants DOES 1–10 are presently unidentified individuals who are

18  employed by or affiliated with the Kansas Office of Judicial Administration and are

19  responsible for operating, managing, or maintaining the Court case management system

20  and related records portals. These Doe Defendants, whose true names and positions are

21  currently unknown, have duties that include entering or modifying case docket

22  information and managing the electronic systems that store and publish the official Court

23  records. Does 1–10 are sued in their official capacities. Each of these Defendants, once

8

1    identified and joined, will be shown to have acted under Color of State Law with respect

2    to the events and record alterations described in this Complaint.

3        13.    Each Defendant named above is sued only in their official capacity for

4    prospective declaratory and injunctive relief.

5    **IV.**        **STATEMENT OF FACTS**

6        14.    In December 2025, for the first time in nearly 27 years, the certified

7    Register of Actions for Case No. 97-CR-2353 displayed a back-dated "09/22/1998 –

8    Minutes" entry (Appendix 22). This newly published line immediately raised a present-

9    tense record-integrity and auditability dispute, because no such entry had ever appeared

10   in any prior certified copy of the case record. The sudden addition of this "Judge's

11   Minutes" entry—decades after the fact—triggered urgent concerns over the record's

12   provenance and prompted Plaintiff to seek immediate preservation of evidence (via a

13   concurrently filed Rule 65 motion) to determine how and when this anomalous entry

14   materialized.

15       15.    Background: The Missing 09/22/1998 Entry and Transcript. In September

16   1998, Plaintiff Jason Fulton was scheduled for a post-trial Motion for New Trial hearing

17   on September 22, 1998. That hearing did occur on the scheduled date, but the official

18   Shawnee County case docket did not contemporaneously record it. No "09/22/1998 –

19   Minutes" (or any similar docket notation for that date) was entered into the Register of

20   Actions at the time. In fact, the proceeding was essentially invisible in the case file:

21   although a Court Reporter transcribed the September 22, 1998, hearing (producing a

22   certified transcript on January 13, 1999, now Appendix 5), there was never any ROA

23   entry to link or even acknowledge that transcript. As a result, the critical September 22,

24   1998 proceeding remained unindexed and effectively concealed in the official record for

9

1    decades, impairing meaningful appellate and post-conviction review of that hearing.

2    16.     Crucially, the authority-bridge for the September 22, 1998, hearing was never

3    documented. The originally assigned judge (Hon. Charles E. Andrews Jr.) did not preside

4    over Plaintiff's Motion for New Trial hearing—he testified as a witness during that

5    proceeding. A different judge, Hon. James P. Buchele, conducted the hearing on that date.

6    Yet the case docket contains no contemporaneous order, minute, or notation explaining

7    this substitution (i.e., no record of Judge Andrews's recusal or Judge Buchele's

8    assignment). However, in 2025, Judge C. William Ossmann later ruled that Judge

9    Andrews "properly recused" so he could testify and that Judge Buchele ruled (Appendix

10   15B), yet the contemporaneous reassignment/transfer trail remains absent from the

11   ROA. Because Andrews testified about off-record juror investigation, the lawfulness of

12   the 09/22 hearing depended on a contemporaneous recusal/reassignment act.

13          Specifically, the substitute-judge posture exists, but the authority bridge does not.

14   As a result, the ROA leaves the judge-assignment authority question unanswered at the

15   OJA-close boundary. This glaring gap in the record's chronology meant there was no

16   official acknowledgment that a judicial reassignment occurred to permit Judge Andrews

17   to take the witness stand. Even more important, this missing authority bridge is not

18   speculative: when Plaintiff asked official record custodians to locate any administrative

19   explanation for the substitute-judge posture, the response was consistently that the system

20   contains no record that accounts for it.

21          17.     Over the years, institutional responses have confirmed the absence of any

22   such record. On August 26, 2009, Shawnee County's Managing Court Reporter, Dorothy

23   J. Seel, informed Plaintiff in writing that a check of the court's computer system showed

1    "no record of any hearing on 09/22/1998." Likewise, after Plaintiff inquired in early

2    2024, Microfilm Department Supervisor Christina Acosta reported on January 18, 2024,

3    that she could locate only a "Case Summary" and the "Certification of Indigence and

4    Order" for the 08/17/1998–09/22/1998 window and wrote: "I have given you everything

5    that I could locate. You are also asking questions that a clerk can't answer," even though

6    the 12/05/2025 certified ROA output now renders a back-dated '09/22/1998 – Minutes'

7    line. In short, official channels have repeatedly indicated that no administrative order or

8    docket entry ever explained how Judge Buchele came to preside in place of Judge

9    Andrews—a structural omission in the case file's audit trail.

10        18.    A Consistent Omission (1999–2024). For more than two decades after

11   1998, every published version of the State v. Fulton case record remained consistent in

12   omitting any September 22, 1998, entry. This was not a one-off glitch in a single printout,

13   but a stable feature of the record's documented history. Notarized ROA copies produced

14   at various points confirmed the same gap: (a) a 1999 notarized ROA baseline (Appendix

15   1A) shows no 09/22/1998 entry; (b) a 2008 notarized ROA copy (Appendix 1B) likewise

16   contains no such entry; (c) a 2014 notarized ROA copy (Appendix 1C) likewise contains

17   no such entry; and (d) a preserved ROA control-baseline as of early November 2024

18   (Appendix 21) contains no 09/22/1998 "Minutes" line. From 1998 through late 2024 the

19   official record consistently reflected no hearing-minute entry on September 22, 1998. The

20   absence of that event was thoroughly documented by the available record artifacts and

21   acknowledged by court staff, not a speculative claim by Plaintiff.

22        19.    Rule 3.04 Remand and Plaintiff's Introduction of the Missing "Minutes"

23   Artifact. In 2024, during Plaintiff's state post-conviction appeal, the missing 1998 entry

1    became the subject of a formal record reconstruction effort. In October 2024 the Kansas

2    Court of Appeals ordered a limited remand under Kansas Supreme Court Rule 3.04 to

3    settle the record (including addressing any missing 1998 transcript or docket notation).

4    The remand hearing was set in Shawnee County for a Status Conference on June 4, 2025.

5          Anticipating that the proceeding would lack critical transparency, Plaintiff

6    (through counsel) moved to PRECLUDE the Rule 3.04 hearing entirely, on the ground

7    that conducting a reconstruction hearing under these circumstances would "ratify the

8    fraud" of the incomplete record. He simultaneously filed motions to recuse the Kansas

9    prosecution team and the assigned judge from the remand, arguing that those involved in

10    or benefiting from the disputed record irregularities should not control the reconstruction.

11    On June 4, 2025, the Shawnee County District Court GRANTED Plaintiff's motion to

12    PRECLUDE the Rule 3.04 hearing (and deemed the recusal requests moot), effectively

13    aborting any live witness testimony on the issue. This effectively eliminated an

14    adversarial Rule 3.04 record-settlement hearing. As a result, the Court of Appeals'

15    remand directive could be satisfied—if at all—only through administrative record

16    updates, rather than through testimony and findings in open court.

17         20.    In the interim, Plaintiff took steps to ensure the missing record would

18    surface: before the June 4th hearing was canceled, Plaintiff had already supplied the

19    reconstruction Court with independent evidence of the elusive "Judge's Minutes." On

20    December 23, 2024, in his filed Response to the State's Objection (Appendix 18),

21    Plaintiff introduced a copy of a minutes sheet from the original case file—an artifact

22    printed on 09/21/1998 at 2:13 PM bearing the heading "MH" (for Motion Hearing) and

23    noting "Next Activity: MH 09/22/98 01:30 PM," later clerk-file stamped on 12/17/1998.

1   This "MH Setting" minutes sheet (Appendix 20) was the first concrete proof that a

2   "Judge's Minutes" page for the September 22 hearing existed in the underlying records.

3   Plaintiff cited this artifact in Response to the State's Objection — "Independent

4   Supporting Sources," p. 9–10, Items B and K ("Recusal hearing minutes" / "Recusal

5   Hearing Minutes, 09/21/1998"), to demonstrate the proceeding's occurrence and to

6   expose the gap in the docket's provenance.

7        Prior to Plaintiff's December 23, 2024 filing, the Shawnee County Courthouse

8   record view treated this "Judge's Minutes" artifact as non-existent or non-locatable, as

9   reflected by institutional correspondence and the long-running absence of any 09/22/1998

10   "Minutes" line in baseline ROA outputs. Notably, just days earlier the State had objected

11   that "the Record of Action… does not reflect any hearing of record" on September 21,

12   1998 (the date of the off-record recusal discussion) and argued it would be improper

13   under Rule 3.04 to reconstruct an "alleged recusal hearing" based only on Plaintiff's

14   assertions. Thus, as of the end of 2024, the official stance of the Kansas Courts was

15   essentially that no record existed of any 9/21/1998 or 9/22/1998 proceeding—apart from

16   the artifact that Plaintiff himself had unearthed and submitted.

17        21.    Post-Remand Changes – The 2025 "Judge's Minutes" Entry. Following

18   the aborted Rule 3.04 hearing, the matter shifted to the Kansas OJA-controlled electronic

19   record publication/certification pipeline. Remarkably, within that administrative pipeline,

20   the court's digital docket was altered to incorporate Plaintiff's very artifact (Appendix 20)

21   —but only in a piecemeal and retrospective fashion. Specifically, in the certified ROA

22   output generated on December 5, 2025 (Appendix 22), a new docket line suddenly

23   appears for "09/22/1998 – Minutes," where none had ever existed before. This late-added

1    entry was evidently generated from the 1998 minutes sheet that Plaintiff provided

2    (Appendix 20). However, the State's system added the entry without any corresponding

3    notation about Judge Andrews's recusal or Judge Buchele's assignment, and without

4    linking or cross-referencing the actual Motion for New Trial transcript from that date

5    (Appendix 5 remains unmentioned in the ROA).

6          In effect, the record was updated after the Motion to Preclude was GRANTED to

7    acknowledge a "Judge's Minutes" on 09/22/1998 but still failed to document the critical

8    context and content of that event. The provenance of this new entry is also conflicted: the

9    minutes sheet on which the State of Kansas relies on carries a clerk's file-stamp of

10   December 17, 1998 (months after the Motion for New Trial hearing date), yet the ROA is

11   treating it as if it were a contemporaneous September 22, 1998, docket entry.

12   Compounding the oddity, the Shawnee County ROA had recorded an "OJA

13   administrative close" on August 10, 1998—a case-closure marker in the system—

14   meaning that, procedurally, no new events should have followed after August 1998

15   absent a reactivation of the case. This is the five-node provenance problem in concrete

16   form: (1) an OJA close marker (08/10/1998), (2) no contemporaneous recusal/assignment

17   bridge (09/21/1998), (3) an orphaned proceeding/transcript (09/22/1998; Appendix 5), (4)

18   a system comparator proving transfer-reason routing can be published (01-CV-879), and

19   (5) a late certified output that introduces the back-dated node without auditable

20   provenance (12/05/2025; Appendix 22). The appearance of a back-dated September 1998

21   entry in a 2025-certified record therefore raises obvious red flags about how the data was

22   inserted and whether normal docketing protocols were bypassed.

1          22.     Even more important, Kansas's own case management system

2    demonstrates that such reassignment or recusal events can be docketed—had they been

3    done at the time. For example, the Register of Actions for a different case (Shawnee

4    County Case No. 01-CV-879) includes a 09/18/2001 entry explicitly labeled "OJA reason

5    for transfer 1," documenting a division-to-division judicial reassignment in that matter

6    (Appendix 10). That same docket also shows Judge Andrews assigned in the K.S.A. 60-

7    1507 posture, underscoring that judicial assignment routing is captured when the system

8    elects to publish it. In Plaintiff's case, by contrast, there is no analogous entry whatsoever

9    in 1998 to reflect Judge Andrews's recusal or the transfer to Judge Buchele. The lack of

10   any such transfer notation in the 97-CR-2353 docket is not a routine or harmless gap—it

11   is a structural record-integrity defect, given the significance of what occurred.

12         23.     Equally important, Independent Appellate Confirmation of Non-

13   Docketable Posture (Kunen). Appendix 6B is a contemporaneous, third-party record from

14   Chief Appellate Defender Jessica R. Kunen documenting that the Shawnee County

15   District Court Clerk reported "no journal entry of conviction and/or sentence on file" on

16   09/03/1998 and 09/09/1998, and confirmed again on 10/29/1998 that it still had not been

17   filed—showing the case's judgment/appeal record was not in a docketable, auditable

18   posture during the same September–October 1998 window in which the ROA now

19   purports to supply a stable 09/22/1998 "Judge's Minutes" anchor (Appendix 6B).

20         24.     In sum, the record now exhibits a conflicted provenance: a judge's recusal

21   in 1998 that was never contemporaneously logged; a key proceeding whose only

22   contemporaneous "minute" was filed away outside the normal docket sequence; and an

23   official ROA entry that materialized decades later, derived directly from the artifact

1    Plaintiff had to supply. All of this has transpired within the OJA-controlled electronic

2    record system, without transparency. This sequence of events—official denial of the

3    record's existence, procedural PRECLUSION of a live inquiry, belated adoption of

4    Plaintiff's evidence into the record, and accelerated administrative alteration of the

5    docket—underscores the urgent need for safeguards.

6        25.    Ongoing Risk of Irreparable Loss of Evidence (System "Accelerate"

7    Concerns). The post hoc publication of a "09/22/1998 – Minutes" line in late 2025 not

8    only alters the historical record—it also introduces a danger that evidence of how this

9    change was made could be permanently lost. The management and certification of

10   Kansas court records (including the Shawnee County ROA) occur within the Kansas

11   Office of Judicial Administration's digital systems ("Kansas OJA"). Critically, each time

12   the electronic record is accessed, modified, or re-certified, system metadata and log files

13   are at risk of being overwritten or erased by routine processes.

14       As time passes and regular data-retention or backup cycles run, the granular

15   evidence of the 2025 insertion—the "audit trail" of the new minutes entry's creation—

16   may be irretrievably expunged. Plaintiff has obtained the December 5, 2025 certified

17   ROA output showing the new entry (Appendix 22), but the underlying database's

18   timestamps, user logs, and change-history flags that could explain its provenance are

19   highly time-sensitive. Without immediate intervention to preserve this electronic

20   evidence, the truth of what happened to the record could be forever beyond reach—

21   including audit data sufficient to reconstruct (a) when the 09/22 "Judge's Minutes" line

22   first appeared, and (b) whether any judge/division assignment fields or routing logs were

23   changed to support the substitute-judge posture.

1        26.    Need for Immediate Preservation. Given the above, there is a substantial

2    threat of irreparable harm to Plaintiff's rights and the integrity of the judicial record. The

3    unusual, back-dated insertion in the docket—especially one filling a decades-old gap tied

4    to judicial recusal—calls for extraordinary care to ensure the record's authenticity going

5    forward. Accordingly, Plaintiff has filed this §1983 action together with an emergency

6    Rule 65 motion to compel preservation of all relevant record-system data (audit logs,

7    metadata, and backup files) before any further alteration or routine purging occurs.

8    Plaintiff also filed, concurrently, a narrowed 'Appendix A Target Subset (Selected Items

9    Only)' (Appendices 1A–1C, 5, 6A–6B, 10–12, 15B–18, 19A–22 (including 21A–21E))

10    consisting of key record artifacts from the Shawnee County case and related proceedings,

11    to provide the Court ready access to the evidentiary underpinnings of these facts (*see*

12    Notice of Filing, filed with the Complaint).

13        Plaintiff seeks preservation of five categories of Kansas OJA digital fingerprints:

14    (1) the 08/10/1998 administrative-close flag history; (2) any 09/21/1998

15    transfer/reassignment bridge logs; (3) the 09/22/1998 authority linkage (transcript

16    indexing vs. judge-assignment fields); (4) transfer logging capability fields (including

17    'OJA reason for transfer 1' type codes) relevant to Conklin→Andrews reassignment Case

18    No. 01-CV-879; and (5) the generation/audit metadata for the 12/05/2025 certified ROA

19    output (Appendix 22)."

20        These materials—drawn from official court records already lodged in State

21    proceedings—are submitted solely to support Plaintiff's request for narrowly tailored

22    preservation relief. By contrast, the complete Control Record Set (Appendices A–C) is

23    not filed at this time. The focus here is on the filed subset of Appendix A items that

1    document the timeline: from the long-standing omission, to institutional denials of the

2    record's existence (Seel 2009; Acosta 2024), to the recent one-sided "reconstruction" of

3    the record. In sum, the facts demonstrate a pattern of deny → PRECLUDE → adopt →

4    accelerate, and only prompt judicial action can freeze the status quo and illuminate how a

5    1998 judicial record surrounding Judge Andrews testimony was retroactively changed in

6    2025.

7    **V.**        **ACTUAL INJURY**

8            Injury I — Procedural Due Process / Record-Custody

9        27.    Plaintiff is subject to accelerated State appellate briefing deadlines in

10   KCOA Case No. 24-128,328-A (brief due March 4, 2026) and, as background only, has

11   pending Kansas Supreme Court original-action proceedings including Case No. 130,118;

12   Plaintiff does not seek to enjoin any State proceeding, but the September 1998 record-

13   integrity dispute still cannot be verified without preserving Kansas OJA-controlled audit

14   records. After 27 years of consistency, the sudden appearance of a back-dated

15   "09/22/1998 – Minutes" entry in the December 5, 2025, certified ROA output (Appendix

16   22) deprives Plaintiff of the ability to litigate from a fixed and reliable record. This new

17   docket node—absent from every prior certified record—retroactively suggests a hearing

18   entry on a date that was historically blank, obscuring the very omission Plaintiff has long

19   relied upon to demonstrate a record gap.

20          In practical effect, the official record now conflicts with itself: earlier notarized

21   copies show no such entry, while the latest certification includes it. Plaintiff cannot safely

22   cite or rely on the ROA in its current form because the goalposts have shifted; any

23   argument premised on the absence of a 09/22/1998 entry for the Motion for New Trial

24   hearing at which Judge Andrews testified can be countered by pointing to the revised

18

1    docket, even though that revision only materialized decades later outside of any

2    adversarial proceeding. By publishing an altered ROA without explanation or

3    provenance, Defendants have undermined the integrity of the record and Plaintiff's

4    ability to obtain meaningful Appellate or post-conviction review based on that record,

5    and meaningful Appellate review depends on a record that is accurate, stable, and

6    adequate to present claimed error. (Griffin v. Illinois, 351 U.S. 12 (1956); Draper v.

7    Washington, 372 U.S. 487 (1963)).

8         By republishing the ROA to add a back-dated 09/22/1998 'Minutes' entry without

9    any auditable provenance, Defendants impede Plaintiff's right of Access to the Courts by

10   obstructing his ability to litigate the missing authority-bridge for the September 22, 1998,

11   Motion for New Trial hearing—where Judge Andrews testified—on appeal and in post-

12   conviction proceedings. Defendants inserted this new entry without notifying Plaintiff or

13   any Court, depriving him of any chance to challenge or inquire into the change. This

14   secretive alteration of the record violated basic procedural due process protections.

15   Because Defendants now publish competing versions of the same Record of Action (pre-

16   December-2025 baselines versus the December 5, 2025, certified output), Plaintiff cannot

17   present a stable, reviewable chronology to any Court without being forced into a moving-

18   target dispute over what the official record "is."

19        Moreover, the belated "Minutes" entry remains an orphaned node in the docket—

20   it appears without linking or referencing the critical Motion for New Trial transcript from

21   September 22, 1998 (Appendix 5). The transcript of that proceeding was transcribed and

22   file-stamped in January 1999, yet it still does not appear anywhere in the ROA sequence

23   as of the latest certified output. Even after inserting the new minutes entry, Defendants

1    did not index or cross-reference the existing transcript into the docket. This means that a

2    reviewing Court or any party examining the certified record today would see a

3    "09/22/1998 – Minutes" line with no indication that a corresponding transcript (or any

4    substantive record of the hearing) exists. Plaintiff is concretely harmed by this

5    disconnect: the content of the September 22, 1998, after proceeding in which Judge

6    Andrews testified remains effectively hidden from view.

7         Appendix 5 is the Motion for New Trial transcript and includes testimony by Hon.

8    Charles Andrews concerning off-record juror-investigation activity; because that

9    testimony required a substitute-judge posture, the absence of an auditable

10   recusal/reassignment authority bridge is not a clerical issue but a structural record-

11   integrity defect. When the State Record System publishes a back-dated "09/22/1998 –

12   Minutes" node without indexing and linking Appendix 5 in the Record of Action,

13   Plaintiff is deprived of a stable, reviewable pathway to present that transcript as part of

14   the certified case chronology.

15        Finally, the way this new docket entry was introduced—administratively and

16   opaquely—creates an ongoing risk that the evidence needed to prove its provenance will

17   be lost. The above-described alteration occurred within the Kansas OJA-controlled

18   electronic case management and certification pipeline managed and operated under

19   Defendants' official custody, including the CMS/portal operators sued as Does 1–10. The

20   OJA system contains (or should contain) audit logs and metadata showing when and how

21   the disputed entry first appeared, but those logs are time-sensitive and may be overwritten

22   absent immediate preservation.

1       If that occurs, Plaintiff's ability to trace the alteration—to pinpoint the date and

2    mechanism of the change—will be irretrievably lost. Plaintiff's injury is sharpened by the

3    threat that, absent immediate preservation, he will never be able to demonstrate when,

4    how, or by whom this "09/22/1998 – Minutes" entry was added.

5       Plaintiff is therefore suffering a real and present injury to procedural due process:

6    the State's maintenance of a manipulated record, and the failure to safeguard the audit

7    trail behind it, deprive him of basic assurance that the record is accurate, stable, and

8    subject to verification. Injury II is the mechanism. Defendants left no auditable footprint

9    showing whether Plaintiff's pro se filings were received, returned, or refused by the

10   Kansas Appellate Courts filing channel. Without that intake record, there was no

11   reviewable path to obtain judicial review of Injury I while briefing deadlines advanced

12   and Kansas Office of Judicial Administration (OJA)-certified output continued to change.

13   Injury II — Denial of Access to Courts

14      28.    Access-to-Courts Injury – Violation of the Right to Petition/Access by

15   Lack of Auditable Intake. Plaintiff has also suffered an ongoing denial of his right of

16   Access to the Court, including the concrete "actual injury" component recognized in

17   Christopher v. Harbury, 536 U.S. 403 (2002). In the Tenth Circuit, denial or delay of

18   Access to the Court requires a showing of prejudice and causal connection between the

19   interference and the litigation harm, which is the injury Plaintiff pleads below. This injury

20   stems from Defendants' actions—taken under Color of State Law—in blocking and

21   erasing the trail of Plaintiff's attempts to invoke judicial relief at the very time the record

22   was in flux.

1      This access injury is not abstract. The disputed subject is

2    the 09/21/1998–09/22/1998 authority Hinge—the window in which the record reflects

3    Judge Andrews testifying on 09/22/1998 while the record contains no contemporaneous,

4    auditable 09/21/1998 transfer/recusal bridge. If the Hinge has no hearing record and no

5    auditable bridge, there is nothing to argue and nothing for any court to review.

6      This access injury matters because Plaintiff exhausted Kansas's record-

7    reconstruction avenues around the September 1998 ROA Hinge Cluster, and Kansas's

8    administrative "adopt → accelerate" posture left Plaintiff without any auditable appellate

9    intake-and-rejection trail at the precise moment Kansas OJA-certified output was

10    changing.

11      Particulars establishing actual injury include: (a) July 17, 2025 Pro Se filings

12    (Certificate of Service; no appellate footprint): Plaintiff tendered multiple time-

13    sensitive Pro Se preservation filings on July 17, 2025, including (i) a Motion to Strike the

14    July 16 Status Report, (ii) a Notice of Representation Status and request to proceed Pro

15    Se, and (iii) a Pro Se Status Report, each bearing a July 17, 2025 Certificate of Service,

16    yet the Kansas Appellate Courts created no transparent received/returned/refused

17    footprint (no docket entry and no file-stamp) sufficient to preserve a reviewable record of

18    submission, rejection, and reason; (b) Remand-for-counsel posture while Plaintiff was

19    literally without counsel of record: on July 17, 2025, the Kansas Court of Appeals

20    granted counsel's withdrawal and remanded for appointment of new counsel while

21    retaining jurisdiction and keeping briefing stayed; and (c) September 10, 2025 Motion to

22    Stay (re-tender; recordings; no footprint): Plaintiff re-tendered the preservation demand

23    in the active briefing window through a Motion to Stay Briefing, but it was not file-

1   stamped or docketed in the KCOA; Plaintiff possesses recordings of the KCOA clerk

2   intake interactions involving Chief Deputy Clerk Anthony T. Bukaty and Clerk Douglas

3   T. Shima, confirming that the filings were blocked from an auditable intake trail at the

4   moment preservation relief was most time-sensitive.

5          This contradiction matters. Plaintiff tendered the July 17, 2025, pro se filings with

6   Certificates of Service, yet the Kansas Appellate Courts created no auditable

7   accept/return/refuse footprint. At the same time, the Kansas Court of Appeals treated the

8   case as in a remand-for-counsel posture. The result was the loss of a reviewable Access-

9   to-Court channel at the moment record-custody decisions surrounding the September 22,

10  1998, Motion for New Trial hearing—where Judge Andrews testified—were being made.

11  **VI.**                    **CLAIMS FOR RELIEF**

12  Count I – 42 U.S.C. § 1983 — Procedural Due Process (Fourteenth Amendment)

13         29.     Record-Custody Injury / Moving-Target ROA / Auditability Deprivation

14  (Against Defendants Smith, Wong, Taylor, Pletcher, and Does 1–10, in official

15  capacities). Plaintiff incorporates by reference all preceding paragraphs as if fully set

16  forth herein.

17         30.     Under Color of State Law, Defendants Shima and Bukaty (Kansas

18  Appellate Courts Clerk's Office), together with Defendants Pletcher and Does 1–10,

19  interfered with and obstructed Plaintiff's attempts to invoke preservation relief by failing

20  to create any auditable received/returned/refused footprint for Plaintiff's July 17, 2025

21  Pro Se filings and his September 10, 2025 Pro Se Motion to Stay Briefing during the

22  remand and active briefing windows.

1       31.    Defendants' post hoc alteration and destabilization of the certified ROA—

2   by publishing a back-dated "09/22/1998 – Minutes" entry in a December 5, 2025 certified

3   ROA output that was absent from prior certified baselines—deprives Plaintiff of a stable,

4   accurate, and reviewable record required for meaningful judicial review (*see* Griffin v.

5   Illinois, 351 U.S. 12 (1956); Draper v. Washington, 372 U.S. 487 (1963)). This alteration

6   inflicts a present procedural due process injury.

7       32.    Defendants introduced and published this altered docket entry

8   administratively and without notice to Plaintiff or any Court, depriving Plaintiff of any

9   meaningful opportunity to challenge, test, or verify the change and its provenance.

10      33.    Defendants' continued publication of competing certified versions of the

11  same ROA, coupled with their failure to index or link the Motion for New Trial transcript

12  (Appendix 5) into the ROA sequence, undermines the integrity of the official record. It

13  further deprives Plaintiff of basic assurance that the record is accurate, stable, and subject

14  to verification.

15      34.    Defendants' ongoing failure to preserve and safeguard audit logs,

16  metadata, certification job records, and indexing/linkage data needed to establish

17  provenance and prevent overwriting constitutes an ongoing procedural due process

18  violation. This failure threatens the irreparable loss of custody evidence essential to

19  Plaintiff's ability to seek judicial relief.

20      35.    Plaintiff is entitled to prospective declaratory and injunctive relief to

21  preserve the status quo of the certified ROA output and to ensure the preservation and

22  disclosure of all auditability and provenance evidence necessary to determine when, how,

1    and by what custody mechanism the disputed "09/22/1998 – Minutes" entry first

2    appeared in any certified output.

3              Count II – 42 U.S.C. § 1983 — Denial of Access to the Court

4        36.    First Amendment Right to Petition / Denial of Access to the Court / Lack

5    of Auditable Intake Trail / Actual Injury (Against Defendants Shima, Bukaty, Pletcher,

6    and Does 1–10, in official capacities). Plaintiff's Access-to-Courts injury is the denial of

7    any auditable appellate received/returned/refused footprint for his July 17, 2025, and

8    September 10, 2025, Pro Se preservation tenders during a remand-for-counsel window,

9    which operated to prevent judicial review of the 09/21/1998–09/22/1998 authority Hinge

10    while Kansas OJA-certified output was changing and briefing posture advanced.

11        37.    Plaintiff has a Constitutional right of Access to the Courts and the First

12    Amendment right to petition, including the right to pursue nonfrivolous record-

13    preservation and process-based relief without State interference that causes actual injury

14    (see Christopher v. Harbury, 536 U.S. 403 (2002); Lewis v. Casey, 518 U.S. 343 (1996)).

15        38.    Under Color of State Law, Defendants interfered with and obstructed

16    Plaintiff's attempts to invoke judicial relief during the remand window and the active

17    Appellate briefing window by refusing, suppressing, or otherwise failing to provide an

18    auditable intake and docket footprint for Plaintiff's July 17, 2025, Pro Se

19    filings and September 10, 2025, Pro Se Motion to Stay Briefing.

20        39.    Defendants' refusal to provide an auditable submission-and-rejection trail

21    —while docket posture proceeded through counsel-authored Status Report treatment and

22    Plaintiff was in a remand-for-counsel posture—caused concrete prejudice. Defendants'

23    refusal to provide an auditable submission-and-rejection trail prevented the Kansas Court

1   of Appeals from timely considering Plaintiff's preservation requests at the critical

2   moment the ROA was changing. That loss of timely judicial consideration satisfies the

3   'actual injury' requirement. (*see* <u>Treff v. Galetka</u>, 74 F.3d 191 (10th Cir. 1996)).

4       40.    State officials may not abridge or impair Plaintiff's right of Access to the

5   Court by blocking filings at intake or through clerk-level refusal practices (*see* <u>Ex parte</u>

6   <u>Hull</u>, 312 U.S. 546 (1941)). Likewise, when State actors suppress or withhold a

7   prisoner's appeal-related filings so that the Court never receives or considers them, the

8   Constitutional Right is violated by blocking filings at intake or through clerk-level refusal

9   practices that leave no auditable received/returned/refused record; the obstruction itself

10  states an Access-to-the-Courts claim. <u>Cochran v. Kansas</u>, 316 U.S. 255 (1942).

11      41.    As a direct and proximate result of Defendants' conduct, Plaintiff was

12  deprived of any stable, reviewable pathway to place the disputed September 1998 record

13  node and related preservation requests concerning the 09/21/1998–09/22/1998 authority

14  Hinge before a Court at the time when record-custody decisions were being made.

15      42.    Plaintiff is therefore entitled to prospective declaratory and injunctive

16  relief requiring the implementation of an auditable intake trail for submissions raising

17  record-integrity and preservation issues. Such relief should include the preservation of

18  submission receipt/refusal records and a prohibition against the unlogged suppression or

19  rejection of any filings.

20

21      **VII.**              **PRAYER FOR RELIEF**

26

1    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in

2    Plaintiff's favor and against Defendants, and grant the following relief:

3    A. <u>Declaratory Relief</u>

4        1.   A declaration that Defendants' maintenance, certification, and publication of an

5             altered and non-auditable Register of Actions ("ROA")—including the post hoc

6             appearance of a back-dated "09/22/1998 – Minutes" entry without auditable

7             provenance—violates Plaintiff's rights under the Fourteenth Amendment,

8             including procedural due process.

9        2.   A declaration that Defendants' refusal, suppression, or non-docketing of time-

10            sensitive submissions without an auditable submission-and-rejection trail violates

11            Plaintiff's Constitutional right of Access to the Court.

12   B. <u>Injunctive Relief</u>

13       3.   A preliminary and permanent injunction prohibiting further unlogged edits,

14            republishing, or other changes to the ROA and related record architecture that

15            would alter, overwrite, or obscure custody evidence connected to the September

16            1998 ROA Hinge Cluster and the disputed "09/22/1998 – Minutes" entry.

17       4.   A preliminary and permanent injunction ordering Defendants to preserve and

18            produce the complete set of auditability and provenance materials necessary to

19            determine when, how, and by what custody mechanism the disputed "09/22/1998

20            – Minutes" entry first appeared in any certified output, including audit logs,

21            metadata, certification/job records, repository identifiers and job/run identifiers,

22            indexing fields, linkage/cross-reference data (including linkage fields associated

23            with Appendix 5), and any other system records within the Kansas Office of

1    Judicial Administration ("Kansas OJA") electronic case management and

2    certification pipeline that bear on the Hinge Cluster. For avoidance of doubt, the

3    preservation/provenance materials include records sufficient to audit (i) the

4    08/10/1998 OJA administrative close marker; (ii) the absence of any

5    contemporaneous ROA authority-bridge for Judge Andrews's 09/21/1998 recusal

6    and reassignment; (iii) the 09/22/1998 proceeding and transcript linkage

7    (including Appendix 5); (iv) the "OJA reason for transfer 1" comparator routing

8    reflected in Case No. 01-CV-879; and (v) the generation and job history of the

9    12/05/2025 certified ROA output (Appendix 22).

10   5. A preliminary and permanent injunction ordering Defendants to preserve and

11   produce baseline ROA outputs for Case No. 97-CR-2353, specifically the

12   FullCourt Historical ROA Baseline (1999), the DOE Historical ROA Baseline

13   (2008), and the JustWare Historical ROA Baseline (2014), including each output's

14   system "fingerprints" (e.g., platform-specific header/footer identifiers,

15   generated/printed timestamps, page-count headers, and any "Created by" or

16   system footer date markers), together with all associated metadata necessary to

17   authenticate them (including generation timestamps, certification identifiers if

18   any, and any repository/snapshot or job/run identifiers), for comparison against

19   the December 5, 2025 certified ROA output.

20   6. A preliminary and permanent injunction requiring Defendants—including the

21   Kansas Office of Judicial Administration (OJA) and the Kansas Appellate Courts

22   Clerk's Office—to implement and maintain an auditable intake-and-disposition

23   system for submissions raising record-integrity and preservation issues.

1         At minimum, the system must preserve a receipt-and-disposition record

2        showing: (a) what was submitted; (b) when it was submitted; (c) what disposition

3        was made (accepted, returned, or refused); and (d) the stated reason for any return

4        or refusal.

5         Defendants must be prohibited from any unlogged suppression or rejection

6        of filings that deprives Plaintiff of a reviewable record of submission, rejection,

7        and reason.

8         This relief includes, at minimum, an auditable receipt-and-disposition

9        record for Plaintiff's Pro Se submissions dated July 17, 2025 and September 10,

10       2025, and any related tendered Pro Se materials.

11 C. <u>Costs and Further Relief</u>

12     7. An award of Plaintiff's allowable costs.

13     8. Such other and further relief as the Court deems just and proper.

14                **<u>DECLARATION UNDER 28 U.S.C. § 1746</u>**

15        I, Jason A. Fulton, declare under penalty of perjury that the factual statements in

16 this Complaint and in the concurrently filed Motion for Temporary Restraining Order and

17 Preliminary Injunction (Fed. R. Civ. P. 65) concerning (i) the certified Register of Actions

18 dated December 5, 2025 (Appendix 22), (ii) the preserved baseline ROA materials,

19 including notarized ROA copies (Appendix 1A–1C), and (iii) the Appendix A Target

20 Subset filed under my Notice of Filing — Appendix A Target Subset (Selected Items

21 Only), are true and correct to the best of my knowledge. Executed on _____, 2026,

22 at Lansing, Kansas.

                     Respectfully submitted,

Jason A. Fulton #2000036653
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043

<u>CERTIFICATE OF SERVICE</u>

I certify that on ~~February 27~~ , 2026, I served a true and correct copy of the foregoing Complaint for Declaratory and Injunctive Relief (42 U.S.C. § 1983) (no exhibits or attachments are attached to the Complaint) filed with it as follows:

1. By U.S. Mail (first-class), postage prepaid (or, if applicable, by placing it in the institutional legal mail system for mailing); and
2. By email transmission from karri.m.fulton.records@gmail.com, of the Complaint only to recipients for whom a public email address is listed below (in addition to U.S. Mail).

Service was made to the following persons at the addresses listed (and by email where listed):

Kansas Office of Judicial Administration
Attn: Defendant Stephanie Smith, Judicial Administrator
Attn: Defendant Alex Wong, Chief Information Technology Officer
Attn: Defendant Lisa Taylor, Public Information Director / KORA Records Custodian
Kansas Judicial Center
301 SW 10th Avenue
Topeka, KS 66612
info@kscourts.gov

Shawnee County District Court Clerk
Attn: Defendant Stacy Pletcher, Clerk of the District Court, Shawnee County
200 SE 7th Street, Room 209
Topeka, KS 66603
countyclerk@snco.us

Clerk of the Kansas Appellate Courts
Attn: Defendant Douglas T. Shima, Clerk of the Kansas Appellate Courts
Attn: Defendant Anthony T. Bukaty, Chief Deputy Clerk of the Kansas Appellate Courts
301 SW 10th Avenue
Topeka, KS 66612
appellateclerk@kscourts.gov

Shawnee County District Attorney's Office
Attn: Michael F. Serra
Attn: Jodi Litfin
200 SE 7th Street, Suite 214
Topeka, KS 66603
michael.serra@snco.us
jodi.litfin@snco.us