**FILED**
**U.S. District Court**
**District of Kansas**
05/05/2026
**Clerk, U.S. District Court**
By:__SND__ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JASON A. FULTON,

    **Plaintiff,**

    v.
                                  **CASE NO. 26-3039-JWL**

STEPHANIE SMITH, et al.,

    **Defendants,**

## MEMORANDUM AND ORDER

Plaintiff filed this pro se Complaint for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201–2202. (Doc. 1, at 2.) Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas. On March 5, 2026, the Court entered a Memorandum and Order to Show Cause (Doc. 9) ("MOSC") ordering Plaintiff to show good cause why this action should not be dismissed without prejudice based on *Younger* abstention. Plaintiff filed a response (Doc. 10), and on April 17, 2026, the Court entered a Memorandum and Order (Doc. 11) ("M&O") directing officials from the Kansas Attorney General's Office ("KAGO Officials") to submit a *Martinez* report. The *Martinez* Report (Docs. 12, 13) (the "Report") has now been filed.

## I. Background

Plaintiff's factual allegations and the Court's screening standards are set forth in detail in the MOSC. In summary, Plaintiff challenges the accuracy and completeness of the record in his state court criminal case. *See State v. Fulton*, Case No. 97-CR-2353 (District Court of Shawnee County, Kansas). Plaintiff alleges that he is bringing this action "to address a present-tense Record-Custody and auditability dispute arising from a newly appearing back-dated '09/22/1998 – Minutes' line in the certified Register of Actions for State v. Fulton, Case No. 97-CR-2353."

1

(Doc. 1, at 2.)   Plaintiff claims that the entry corresponds to a proceeding (apparently a hearing on a Motion for New Trial) that occurred in late September 1998 but was not properly documented on the docket at that time. *Id*. at 3.   Plaintiff claims that the entry was displayed on the docket for the first time in December 2025.   *Id*. at 9.   Plaintiff states that he is not seeking any ruling on the ultimate merits of his underlying case, nor asking the Court to vacate any State-court judgment or to otherwise intervene in the State proceedings.   *Id*. at 4.   Plaintiff states that he "seeks orders that preserve the status quo of the certified Register of Actions, prevent further unlogged edits or republishing that could overwrite custody evidence, and require preservation/production of the audit metadata and system records necessary to determine when, how, and by what custody mechanism the back-dated '09/22/1998 – Minutes' entry first appeared in certified output."   *Id*. at 3.

The Court found in the MOSC that Plaintiff acknowledged in his Complaint that he has ongoing proceedings before the Kansas Court of Appeals and the Kansas Supreme Court.   The Court found that it appears that prior to filing this action on February 27, 2026, Plaintiff filed a mandamus action in three of his criminal cases and three of his K.S.A. § 60-1507 actions.   The Court ordered Plaintiff to show good cause why the Court should not abstain from hearing this case under *Younger v. Harris*, 401 U.S. 37 (1971).   The Court also noted that Plaintiff alleged that because he is only seeking prospective injunctive relief against Defendants in their official capacities, this action falls within the *Ex parte Young* exception to sovereign immunity.   (Doc. 1, at 6) (citing *Ex parte Young*, 209 U.S. 123 (1908)).   The Court found that it must still determine whether it is required to abstain under *Younger*.   *See Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1265 (10th Cir. 2002) (allowing appellants to proceed with their claim under *Ex parte Young*, and then addressing *Younger* abstention and finding that abstention was warranted); *see also Hunter v. Kansas*, 2008 WL 2397559, at *2 (D. Kan. 2008) ("Although the Supreme Court

has carved out an exception to state sovereign immunity for suits seeking prospective injunctive relief from state officials, *Ex Parte Young, . . .* the Supreme Court in *Younger v. Harris, . . .* narrowly proscribed federal injunctions and declaratory relief that interfere with ongoing state criminal proceedings.").

The Court also found in the MOSC that Plaintiff's request for injunctive relief is in the nature of a request for mandamus relief against state officers, and federal courts "'have no authority to issue such a writ [of mandamus] to direct state courts or their judicial officers in the performance of their duties.'" *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (quoting *VanSickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986) (internal quotation marks omitted)).

The Court found in the M&O that the proper processing of Plaintiff's claims could not be achieved without additional information from KAGO Officials.   *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991); *see also Apodaca v. N.M. Adult Prob. & Parole*, 2015 WL 13662874, at 2, n.5 (D. N.M. 2015), *Report and Recommendation adopted by* 2015 WL 1918153 (D. N.M. 2015) (noting that the court ordered a *Martinez* Report to address plaintiff's claims, to state whether records pertaining to the allegations existed, and to address standing, the *Heck* bar, and *Younger* abstention).   The Court directed the KAGO Officials to prepare a *Martinez* Report on the limited issue of whether or not Plaintiff has sought, or will be able to seek, the same relief in his state court proceedings, and whether or not the relief Plaintiff seeks is in the nature of mandamus, requiring the Defendants to perform affirmative acts.   The M&O also provided that "[i]f the relevant data has already been preserved or is not at risk of being purged, the Interested Party should so notify the Court."   (Doc. 11, at 9.)

## II.  The Report

The KAGO Officials submitted the Report on May 1, 2026.   (Docs. 12, 13.)   The Report provides that "the investigation shows that Plaintiff has sought and continues to seek the same

relief in state court, that the relief he seeks is enforcement of a ministerial act in the nature of mandamus, and that the relevant data has been preserved and is not at risk of being purged." (Doc. 12, at 1.)

The Report sets forth the details of Plaintiff's state court proceedings. *Id*. at 1–4. The Report provides that "Plaintiff has filed multiple original actions in the Kansas Supreme Court invoking that court's mandamus jurisdiction, including a Petition for Writ of Mandamus and Application for Temporary Injunctive Relief and a separate Petition for Supervisory Mandamus under Kansas Supreme Court Rule 9.01." *Id*. at 5 (citing Ex. 2, at 001098-001955). "In both filings, Plaintiff seeks to compel judicial branch officials to take action concerning the creation, maintenance, preservation, and documentation of court records." *Id*.   The Report sets forth the details of Plaintiff's filings and the relief sought in state court. *See id*. at 5–6.

The Report also states that "[s]atisfaction of Plaintiff's request for relief would require court officials to take affirmative steps to locate, preserve, analyze, and effectively explain the provenance of a disputed docket entry . . . [s]uch affirmative relief is in the nature of mandamus, as it seeks to require state officials to perform specific acts related to record investigation and disclosure." *Id*. at 8.   The Report provides that based on existing court rules, "the relief requested by Plaintiff would duplicate court officials' existing obligation to preserve court records."   *Id*. at 9.

The Report also specifically provides that:

> information obtained from Shawnee County District Court personnel reflects that ROA entries and associated case data are maintained within the court's case management system as part of the official court record and are not subject to routine deletion, purging, or overwriting in the ordinary course of business. The systems used to maintain these records preserve entries once created, and any differences in how entries appear in various outputs or reports may be attributable to formatting or system display

characteristics rather than alteration of the underlying data. (Ex. 4, ¶¶ 6–14).

*Id*. at 4.   The Report further provides that:

> Historically, Shawnee County District Court maintained both paper case files and microfilm records. The records department retained paper files even after microfilming and, in certain instances, would refer back to the paper file to obtain documents that were not captured on microfilm. In cases involving repeated requests for records, staff would sometimes rely on paper files rather than microfilm due to ease of access. (Ex. 5, ¶10). As part of the court's transition away from microfilm systems, documents that were previously filed but not microfilmed may be imaged into the current case management system when located in paper files. This process allows the court to preserve and access such documents within the electronic system going forward. (Ex. 5, ¶11).
>
> On November 26, 2024, Rodney Simecka, a trial clerk with approximately 24 years of experience, located the September 22, 1998 Judge's Minutes in an existing paper file associated with Plaintiff and imaged the document into the case management system so that it would be accessible as part of the electronic record. (Ex. 5, ¶¶1, 3, 12). To the extent the system maintains audit logs or related system data reflecting the creation or modification of entries, such data is maintained and is not altered or overwritten as part of routine operations. (Ex. 4, ¶10; Ex. 5, ¶13). Further, to the extent there are differences between how such entries appear in various outputs or views of the record (including public portal displays or certified ROA reports generated at different times), those differences may reflect system formatting, data migration, or display characteristics rather than any alteration of the underlying record. (Ex. 7, ¶10). There is no routine process by which the case records or associated data relevant to Plaintiff's allegations—including the ROA entry identified by Plaintiff and any related system data—would be automatically deleted, purged, or overwritten in the ordinary course of business. (Ex. 4, ¶ 11; Ex. 5, ¶14; Ex. 7, ¶11).
>
> The data relevant to Plaintiff's claims—including the ROA entry identified by Plaintiff and any associated system data maintained by the court—has been preserved and is not presently at risk of being deleted, purged or overwritten. (Ex. 4, ¶12; Ex. 5, ¶15; Ex. 7, ¶12). In addition, the court has taken steps to ensure that the relevant case records and associated data remain preserved, and there is no indication that such data will be deleted, altered, or overwritten in the ordinary course of operations. (Ex. 4, ¶13; Ex. 5, ¶16; Ex. 7, ¶13).
>
> During Plaintiff's interview on April 27, 2026, Plaintiff did not identify any specific basis to believe that the relevant data was

> at risk of deletion or compromise. Rather, Plaintiff referenced his belief that certain entries, including the September 22, 1998 ROA entry, were added to the record at a later time, but did not identify any instance in which records had been deleted or purged.  (Ex. 6, ¶4.b.). Plaintiff also indicated that he does not have knowledge of how the court maintains its records or system data. (Ex. 6, ¶4.c.).
>
> Accordingly, because the data at issue has been preserved and is not at risk of being purged, the Interested Party respectfully submits that the preservation concerns identified by the Court have been addressed.

*Id*. at 10–11.

The information used to prepare the Report was obtained through interviews with employees of the Kansas Office for Judicial Administration, the Shawnee County District Court, and Plaintiff.  *Id*. at 4.   "Publicly available court records of Plaintiff's past and current litigation were also reviewed" and "[a]pplicable legal standards governing mandamus and the preservation of court records were also analyzed."  *Id*.

### III. Response Required

The Court will grant Plaintiff an opportunity to respond to the Report.   In his response to the MOSC, Plaintiff argued that mandamus relief would require a state official to "perform an adjudicative act" and his requested preservation relief is "prohibitory: it directs custodians not to destroy, overwrite, or purge existing electronic audit/provenance materials." (Doc. 10, at 12.) Based on the Report, it appears that this request is moot.   Plaintiff should show good cause: 1) why his request for prohibitory relief is not moot in light of the findings in the Report that no data is at risk of being deleted, purged, or overwritten; 2) why any further request for injunctive relief is not in the nature of a request for mandamus relief against state officers; and 3) why the Court would not be required to abstain from any remaining claims based on *Younger*.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 5, 2026,** in which to show good cause why this matter should not be dismissed for the reasons set

forth in this Memorandum and Order.   Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS SO ORDERED**.

**Dated May 5, 2026, in Kansas City, Kansas.**

**S/   John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**